<pre>
 1                    UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF OHIO
 2                   EASTERN DIVISION AT CLEVELAND

 3

 4   UNITED STATES OF AMERICA,    *      CASE NO. 1:22-cr-090
                                  *
 5            Plaintiff,          *
                                  *
 6       vs.                      *      OCTOBER 12, 2023
                                  *
 7   KENNETH EVANS,               *
                                  *
 8            Defendant.          *
                                  *
 9

10

11          TRANSCRIPT OF SENTENCING PROCEEDINGS (CONT'D)
             HELD BEFORE THE HONORABLE PAMELA A. BARKER
12                  UNITED STATES DISTRICT JUDGE

13

14   APPEARANCES:

15
     For the Plaintiff:            Adam J. Joines, AUSA
16

17   For the Defendant:            Kevin M. Spellacy, Esq.

18
     Probation Officers:           Mark Shannon
19                                 Naomi Morgan

20

21   Official Court Reporter:      Lance A. Boardman, RDR, CRR
                                   United States District Court
22                                 801 West Superior Avenue
                                   Court Reporters 7-189
23                                 Cleveland, Ohio 44113
                                   216.357.7019
24

     Proceedings recorded by mechanical stenography; transcript
25   produced by computer-aided transcription.
</pre>

| | | |
|---|---|---|
| 09:03:58 | 1 | (In open court at 9:03 a.m.) |
| 09:03:59 | 2 | THE COURT: We are on the record and here for |
| 09:04:01 | 3 | sentencing in the matter captioned United States of America |
| 09:04:03 | 4 | vs. Kenneth Evans. This is Case Number 1:22-cr-90. |
| 09:04:10 | 5 | Present in the courtroom are the defendant, Kenneth |
| 09:04:13 | 6 | Evans, his counsel, Mr. Kevin Spellacy, Assistant United |
| 09:04:17 | 7 | States Attorney Adam Joines, and Probation Officer Mark |
| 09:04:21 | 8 | Shannon. |
| 09:04:22 | 9 | This is a continuation of a hearing, sentencing |
| 09:04:26 | 10 | hearing, that was set for and began on June 22, 2023, during |
| 09:04:32 | 11 | which the defendant, through counsel, asked for a |
| 09:04:35 | 12 | continuance and was then instructed to notify the Court of |
| 09:04:40 | 13 | the defendant's intentions, that is, to go forward with the |
| 09:04:43 | 14 | sentencing hearing on a date that allowed defense counsel to |
| 09:04:47 | 15 | assert substantive legal arguments associated with the |
| 09:04:51 | 16 | computation of the adjusted offense level, to pursue a |
| 09:04:56 | 17 | motion to withdraw the defendant's guilty plea, or to |
| 09:04:58 | 18 | request any other relief upon conferring directly with the |
| 09:05:02 | 19 | defendant. |
| 09:05:02 | 20 | On June 28, 2023, defense counsel did file a request |
| 09:05:06 | 21 | to argue the enhancement in the June 8, 2023, PSR, which was |
| 09:05:13 | 22 | granted by the Court. |
| 09:05:14 | 23 | The sentencing hearing was then reset for July 25, |
| 09:05:17 | 24 | 2023, but at the joint request of the parties was continued |
| 09:05:21 | 25 | to today to allow time for the Sixth Circuit to rule upon |

09:05:25 1    the petition for an *en banc* review of its decision in *United*

09:05:31 2    *States vs. Carter.*

09:05:31 3          Did I state that correctly, Mr. Joines?

09:05:33 4                AUSA JOINES:  Yes, Your Honor.

09:05:35 5                THE COURT:  Thank you.

09:05:35 6          And Mr. Spellacy?

09:05:36 7                ATTORNEY SPELLACY:  Yes, Judge.

09:05:36 8                THE COURT:  All right.  Thank you very much.

09:05:37 9          Now, I have received and reviewed the final

09:05:42 10   presentence investigation report filed on June 8, 2023, as

09:05:46 11   well as the Government's sentencing memorandum filed on June

09:05:49 12   15, 2023, its supplement to sentencing memorandum filed on

09:05:56 13   June 20, 2023, and its notice of supplemental authority

09:06:00 14   filed on August 29, 2023.

09:06:03 15         The Court has also reviewed the defendant's sentencing

09:06:06 16   memorandum filed on June 21, 2023, and the supplement to the

09:06:12 17   defendant's sentencing memorandum that was filed on July 11,

09:06:16 18   2023.

09:06:17 19         Do the parties have any other documents or letters for

09:06:20 20   the Court?

09:06:20 21         Mr. Joines?

09:06:21 22                AUSA JOINES:  Nothing else from the United

09:06:23 23   States.

09:06:23 24                THE COURT:  Thank you.

09:06:23 25         Mr. Spellacy?

09:06:24   1            ATTORNEY SPELLACY:  No, Your Honor.

09:06:25   2            THE COURT:  Thank you.

09:06:26   3       Now, Mr. Spellacy, have you and your client read and

09:06:30   4   discussed the final presentence investigation report?

09:06:33   5            ATTORNEY SPELLACY:  Yes, Your Honor.

09:06:35   6            THE COURT:  Thank you.

09:06:36   7       On January 10, 2023, the defendant, Mr. Evans, pled

09:06:42   8   guilty to the sole count of the indictment, specifically,

09:06:45   9   felon in possession of a firearm, in violation of 18 United

09:06:50  10   States Code Sections 922(g)(1) and 924(a)(2).

09:06:55  11       According to the presentence report, pursuant to

09:06:59  12   United States Sentencing Guidelines Section 2K2.1(a)(2), the

09:07:04  13   base offense level is 24 because the defendant committed the

09:07:09  14   instant offense subsequent to sustaining two felony

09:07:13  15   convictions for crimes of violence or controlled substance

09:07:17  16   offenses.

09:07:19  17       According to the PSR, the defendant has two prior

09:07:25  18   crimes of violence.  One, he was convicted of aggravated

09:07:28  19   robbery in violation of Ohio Revised Code Section

09:07:31  20   2911.01(A)(1) in Case Number CR-09-529317, and he was

09:07:37  21   convicted of aggravated robbery, in violation of Ohio

09:07:43  22   Revised Code Section 2911.01(a)(3), in Cuyahoga County Case

09:07:47  23   Number CR-04-459923.

09:07:52  24       The PSR writer concluded that there are no other

09:07:55  25   specific offense characteristics, adjustments, or

enhancements that apply.

And the PSR writer gave a three-level reduction for acceptance of responsibility pursuant to United States Sentencing Guidelines Section 3E1.1(a) and (b), resulting in a total offense level of 21.

The PSR writer concluded that the defendant's criminal history category is V, resulting in a guideline sentencing range of 70 to 87 months of imprisonment, a supervised release range following imprisonment of one to three years, and the defendant is ineligible for probation under the guidelines.  The fine range is $15,000 to $150,000.  And there is a special mandatory assessment of $100. Restitution is not applicable.

It was brought to my attention this morning by the PSR writer that the amendment to the guidelines effective November 1, 2023, and its retroactive application effective February 1, 2024, may apply in terms of the application of United States Sentencing Guidelines Section 4A1.1(e).  In other words, Mr. Evans was on parole at the time of this offense, and under the amendment, and specifically that provision, he would receive only 1 criminal history point as opposed to 2, and that would mean he would have 11 points. But nonetheless, even with that 11 points, he would still be a criminal history category V.

What's your position on that, Mr. Joines?

09:09:31  1          AUSA JOINES:  The United States agrees that

09:09:36  2     that amendment, if he were sentenced after November 1, would

09:09:39  3     apply, and that there is some retroactivity applied to it as

09:09:43  4     well.

09:09:43  5         We agree that it doesn't change the criminal history

09:09:45  6     category, but at the end of the day we agree with the

09:09:48  7     Court's summary and also with Pretrial Services on its

09:09:50  8     analysis of this.

09:09:50  9          THE COURT:  I'm not going to necessarily

09:09:52  10    require a revised PSR.  Are you okay with that?

09:09:55  11          AUSA JOINES:  I think our reviewing it on the

09:09:58  12    record is sufficient.  Thank you.

09:10:00  13          THE COURT:  All right.  Thank you.

09:10:00  14        Mr. Spellacy, your position?

09:10:02  15          ATTORNEY SPELLACY:  Agreed, Judge.

09:10:05  16          THE COURT:  All right.  Thank you.

09:10:05  17        I am going to apply 4A1.1(e) because certainly the

09:10:10  18    amendments are expected to go into effect November 1, and

09:10:14  19    the commission has already decided or recommended that they

09:10:16  20    be applied retroactively as of February 1, 2024.  So I'm

09:10:21  21    going to give Mr. Evans the benefit of that 1 criminal

09:10:27  22    history point reduction.  But nonetheless, his criminal

09:10:30  23    history category still remains V with criminal history

09:10:34  24    points of 11.

09:10:34  25        Mr. Spellacy, any objection to that?

09:10:36   1        ATTORNEY SPELLACY:  No, Your Honor.

09:10:38   2        THE COURT:  All right.  Thank you very much.

09:10:38   3    Now, the sentencing memoranda filed by the Government

09:10:43   4    indicates that it agrees with the PSR writer's conclusion

09:10:45   5    that the defendant's prior conviction for aggravated

09:10:49   6    robbery, in violation of Ohio Revised Code Section

09:10:52   7    2911.01(A)(1), and his prior conviction for, and if I said

09:10:57   8    aggravated robbery previously, I just meant robbery, in

09:10:59   9    violation of Ohio Revised Code Section 2911.01(a)(3), both

09:11:05   10   qualify as crimes of violence under the guidelines

09:11:08   11   enumerated offense clause because each meets the definition

09:11:11   12   of extortion.

09:11:12   13        The Government relies upon the Sixth Circuit's

09:11:15   14   decision in *United States vs. Carter*, 69 F.4th 361, wherein

09:11:21   15   the Court concluded that a different robbery statute,

09:11:24   16   specifically Ohio Revised Code Section 2911.02(A)(2), was a

09:11:29   17   guidelines crime of violence under United States Sentencing

09:11:33   18   Guidelines Section 4B1.2 that could enhance a firearm

09:11:36   19   conviction, determining that the elements of Section

09:11:40   20   2911.02(A)(2) are, quote, the same as or narrower than, end

09:11:45   21   quote, the guidelines element of extortion.

09:11:49   22        According to the Government, then, this meant that

09:11:53   23   Section 2911.02(A)(2) robbery met the guidelines definition

09:11:58   24   for a crime of violence because under the category approach,

09:12:00   25   it was not broader than the guidelines definition of

09:12:04  1    extortion.

09:12:04  2         Did I state that correctly, Mr. Joines?

09:12:07  3              AUSA JOINES:  Your Honor, yes.  Yes, you did.

09:12:09  4              THE COURT:  All right.

09:12:11  5    And the sentencing memoranda filed by the defendant

09:12:15  6    indicates that he disagrees with the PSR writer's conclusion

09:12:18  7    that these two prior convictions constitute crimes of

09:12:21  8    violence.  Indeed, while acknowledging that pursuant to

09:12:24  9    *Carter*, robbery in violation of Ohio Revised Code Section

09:12:27  10   2911.02(A)(2) is a categorical match for the enumerated

09:12:33  11   offense of extortion as, quote, the elements of Ohio robbery

09:12:36  12   are the same as or narrower than the guidelines elements of

09:12:40  13   extortion, the defendant nonetheless argues that the same

09:12:43  14   cannot be said for the Ohio offense of aggravated robbery

09:12:46  15   under Ohio Revised Code Section 2911.01(A)(1).

09:12:51  16        Did I state that correctly, Mr. Spellacy?

09:12:54  17              ATTORNEY SPELLACY:  Yes, Judge.

09:12:55  18              THE COURT:  All right.  Now, in *Carter*, the

09:12:56  19   defendant was convicted under Ohio Revised Code Section

09:12:59  20   2911.02(A)(2), which requires that a perpetrator, quote,

09:13:04  21   inflict, attempt to inflict, or threaten to inflict physical

09:13:07  22   harm on another, end quote.  And in Lorain County Common

09:13:11  23   Pleas Case Number 09CR077860, the defendant was convicted of

09:13:16  24   aggravated robbery, in violation of 2911.01(A)(1), which

09:13:20  25   provides that no person in attempting or committing a theft

09:13:23  1    offense, as defined in Section 2913.01 of the revised code,

09:13:28  2    or in fleeing immediately after the attempt or offense,

09:13:31  3    shall have a deadly weapon on or about the offender's person

09:13:35  4    or under the offender's control and either display the

09:13:37  5    weapon, brandish it, indicate that the offender possesses

09:13:40  6    it, or use it.

09:13:41  7         The Court concludes that the offense of aggravated

09:13:44  8    robbery under Ohio Revised Code Section 2911.01(a)(1) is a

09:13:48  9    categorical match for the enumerated offense of extortion.

09:13:52  10   That is because 2911.01(A)(1) does not criminalize more

09:13:55  11   conduct than that which is prescribed by the guidelines

09:13:57  12   definition of extortion, which the guidelines define as,

09:14:00  13   quote, obtaining something of value from another by the

09:14:03  14   wrongful use of, (A), force, (B), fear of physical injury,

09:14:07  15   or, (C), threat of physical injury.

09:14:10  16        The Court's conclusion is based upon the Sixth

09:14:12  17   Circuit's decision in *U.S. vs. Carter* as well as the Ohio

09:14:15  18   Supreme Court decisions of *Ohio vs. Evans*, 911 Northeast 2nd

09:14:19  19   889 at 894 — that's a 2009 Supreme Court decision — and

09:14:23  20   *Ohio vs. Harris*, 911 Northeast 2nd 882 at 885.  Again,

09:14:29  21   that's another Ohio Supreme Court decision, 2009.

09:14:31  22        In analyzing 2911.01(A)(1), the Ohio Supreme Court in

09:14:36  23   *Evans* held that the very act of displaying, brandishing,

09:14:39  24   indicating possession, or using the weapon intimidates the

09:14:42  25   victim into complying, and in *Harris* it found that an

09:14:45  1   offender's possession of a deadly weapon itself constitutes

09:14:48  2   the threat to inflict harm on the victim.

09:14:52  3        Moreover, other judges in this district, including

09:14:54  4   Judge Pearson's decision in *United States vs. Hall*, Case

09:14:57  5   Number 5:22-cr-0103 at docket number 43, and Judge Lioi in

09:15:03  6   *United States vs. Hall*, Case Numbers 1:18-cr-409 and

09:15:09  7   1:21-cr-1120, 2023 Westlaw 5103966, have reached the same

09:15:15  8   conclusion that the offense of aggravated robbery under Ohio

09:15:19  9   Revised Code Section 2911.01(A)(1) is a categorical match

09:15:25  10  for the enumerated offense of extortion.  That is because

09:15:28  11  2911.01(A)(1) does not criminalize more conduct than that

09:15:32  12  which is prescribed by the guidelines definition of

09:15:34  13  extortion which the guidelines define as, again, obtaining

09:15:37  14  something of value from another by the wrongful use of

09:15:40  15  force, fear of physical injury, or threat of physical

09:15:44  16  injury.

09:15:46  17       Anything further, Mr. Joines, on that issue?

09:15:50  18            AUSA JOINES:  No, Your Honor.

09:15:51  19            THE COURT:  Mr. Spellacy?

09:15:52  20            ATTORNEY SPELLACY:  Judge, just obviously the

09:15:54  21  supplemental brief that we filed differs from the Court's

09:15:56  22  opinion.  I understand the Court's ruling and appreciate and

09:15:59  23  respect it.  I just note that we object to it.  Thank you.

09:16:02  24            THE COURT:  Yes, I understand that.  And

09:16:03  25  certainly you made that clear in your briefing, the

09:16:06  1   supplemental briefing that was filed, that you take a

09:16:08  2   different position.  But I've reviewed that, and I did find

09:16:12  3   the same not too long ago in a different case, having

09:16:18  4   reviewed that as well.

09:16:19  5        So the next issue is trickier for this Court, and that

09:16:22  6   is the issue of whether the defendant's robbery conviction

09:16:24  7   under 2911.01(a)(3) is a categorical match for the

09:16:30  8   enumerated offense of extortion.  And the Government argues

09:16:32  9   that it is, whereas the defendant argues that it is not.

09:16:37  10       Ohio Revised Code Section 2911.01(a)(3) requires,

09:16:42  11  quote, serious physical harm, end quote, which is different

09:16:45  12  than the, quote, physical harm, end quote, element that the

09:16:48  13  Sixth Circuit in *Carter* determined fell within the

09:16:51  14  guidelines definition of extortion as, quote, (A), force,

09:16:56  15  (B), fear of physical injury, or, (C), threat of physical

09:16:59  16  injury, end quote.

09:17:01  17       Both serious physical harm and physical harm are

09:17:03  18  defined in Ohio Revised Code Section 2901.01.  The serious

09:17:08  19  physical harm definition set forth in Ohio Revised Code

09:17:11  20  Section 2901.01(a)(5)(A) includes, and I quote, any mental

09:17:17  21  illness or condition of such gravity as would normally

09:17:20  22  require hospitalization or prolonged psychiatric treatment,

09:17:24  23  end quote.

09:17:24  24       By contrast, physical harm is defined in ORC

09:17:29  25  2901.01(a)(3) to mean, quote, any injury, illness, or other

09:17:34  1  physiological impairment regardless of its gravity or

09:17:37  2  duration, end quote.

09:17:38  3      The question then is whether a robbery statute

09:17:41  4  requiring serious physical harm is broader than the

09:17:44  5  extortion statute requiring physical harm because it could

09:17:48  6  in theory be committed solely by causing such grave mental

09:17:53  7  illness or condition.

09:17:54  8      Would you agree with that, Mr. Joines?

09:17:56  9          AUSA JOINES:  I agree with that summary, Your

09:17:58  10  Honor, yes.

09:17:58  11          THE COURT:  And Mr. Spellacy, do you agree?

09:17:59  12          ATTORNEY SPELLACY:  I do, Your Honor.

09:18:01  13          THE COURT:  All right.  The Court does find

09:18:02  14  that the robbery statute at issue here in this particular

09:18:05  15  case, ORC 2911.01(a)(3), which does require serious physical

09:18:10  16  harm that includes any mental illness or condition of such

09:18:14  17  gravity as would normally require hospitalization or

09:18:17  18  prolonged psychiatric treatment, is broader because it could

09:18:21  19  in theory be committed solely by causing such grave mental

09:18:24  20  illness or condition.

09:18:25  21      Therefore, the Court concludes that ORC 2911.01(a)(3)

09:18:30  22  is not a categorical match for extortion as defined in the

09:18:34  23  sentencing guidelines.

09:18:34  24      Mr. Joines?

09:18:35  25          AUSA JOINES:  Thank you, Your Honor.

09:18:36   1        I would just like to note for the Court's awareness —

09:18:40   2   I know it's already reviewed all the documents — in the

09:18:42   3   supplement to the sentencing memorandum the United States

09:18:45   4   does identify the Supreme Court case of *Moncrieffe v.*

09:18:49   5   *Holder*, 569 United States 184 from 2013, which talks about

09:18:54   6   the categorical approach and states, quote, the categorical

09:18:59   7   approach requires looking for a realistic probability and

09:19:02   8   not a theoretical possibility that a state would apply a

09:19:05   9   given statute to a minimum conduct to make those actions

09:19:08  10   criminal.

09:19:08  11        And the United States did look at Ohio court cases

09:19:12  12   because we obviously were aware of this distinction, and we

09:19:15  13   could not find any case in which 2911.01(a)(3) was applied

09:19:22  14   to a defendant where solely mental harm was the driving

09:19:28  15   force that mandated that conviction.

09:19:30  16             THE COURT:  And you also pointed to Judge

09:19:31  17   Sutton's opinion in the case, correct?

09:19:34  18             AUSA JOINES:  Yes, I believe so, correct.

09:19:37  19        And the three that we identified were *Ohio v. Rogers*,

09:19:41  20   *Ohio v. Bouyer*, and *Ohio v. Hambrick*.  And in each of these

09:19:46  21   cases, even though there was some element of mental harm

09:19:50  22   that was alleged and therefore assisted with a conviction,

09:19:52  23   it always accompanied physical harm as well.

09:19:54  24        And so from our analysis, 2911.01(a)(3) cannot

09:19:59  25   actually -- has not actually been applied such that mental

| | | |
|---|---|---|
| 09:20:04 | 1 | harm was the only harm at issue in the case. |
| 09:20:07 | 2 | THE COURT:  But it could be? |
| 09:20:08 | 3 | AUSA JOINES:  There's a theoretical |
| 09:20:10 | 4 | possibility, Your Honor, yes, there is. |
| 09:20:11 | 5 | THE COURT:  I understand the Government's |
| 09:20:12 | 6 | position.  I did review your supplemental memorandum on that |
| 09:20:15 | 7 | issue, and the cases that you cited, but nonetheless have |
| 09:20:19 | 8 | reached this conclusion.  And I understand that you'll be |
| 09:20:21 | 9 | objecting to that. |
| 09:20:21 | 10 | AUSA JOINES:  Thank you. |
| 09:20:22 | 11 | THE COURT:  Thank you. |
| 09:20:23 | 12 | Mr. Spellacy? |
| 09:20:24 | 13 | ATTORNEY SPELLACY:  Nothing, Judge.  Thank |
| 09:20:25 | 14 | you. |
| 09:20:25 | 15 | THE COURT:  All right.  The Court does find |
| 09:20:27 | 16 | that the defendant's prior conviction under ORC |
| 09:20:30 | 17 | 2911.01(a)(3) does not constitute a crime of violence under |
| 09:20:35 | 18 | the enumerated offense clause and cannot be used to enhance |
| 09:20:38 | 19 | the firearms offense that the defendant pled guilty to. |
| 09:20:40 | 20 | Specifically, then, the Court concludes that the |
| 09:20:42 | 21 | defendant's adjusted offense level before acceptance of |
| 09:20:44 | 22 | responsibility is 20 pursuant to United States Sentencing |
| 09:20:47 | 23 | Guidelines Section 2K2.1(a)(4)(A). |
| 09:20:50 | 24 | Now to the issue of acceptance of responsibility. |
| 09:20:53 | 25 | According to paragraph 11 of the presentence investigation |

09:20:55  1   report, the defendant did provide a verbal statement

09:20:58  2   admitting involvement in the offense.

09:21:00  3        Does the Government have a motion to reduce the

09:21:04  4   offense level by three levels pursuant to United States

09:21:05  5   Sentencing Guidelines Sections 3E1.1(a) and (b)?

09:21:09  6             AUSA JOINES:  The United States makes that

09:21:10  7   motion.

09:21:10  8             THE COURT:  Thank you.

09:21:10  9        The Court grants the Government's motion and will

09:21:14  10  reduce the offense level by three levels pursuant to United

09:21:17  11  States Sentencing Guidelines Sections 3E1.1(a) and (b).

09:21:19  12  Therefore, the total offense level is 17.

09:21:21  13       The presentence investigation report indicates that

09:21:24  14  the defendant's criminal history category is V.  And again,

09:21:29  15  as already stated, even with the application of the Section

09:21:34  16  4A1.1(e) anticipated to go into effect November 1 and to

09:21:38  17  have retroactive application, the defendant's criminal

09:21:42  18  history category would still remain V.

09:21:44  19       So a total offense level of 17 and a criminal history

09:21:48  20  category of V produces a guidelines sentence of 46 to 57

09:21:52  21  months of imprisonment, a guidelines supervised release term

09:21:56  22  of one to three years, and a guidelines fine range of

09:21:59  23  $10,000 to $95,000.  The mandatory special assessment is

09:22:02  24  $100.  The defendant is ineligible for probation under the

09:22:06  25  guidelines provisions.

09:22:07  1      Are there any objections for the record, AUSA Joines?

09:22:12  2              AUSA JOINES:  Not on the -- not from the

09:22:14  3  United States, no.

09:22:15  4              THE COURT:  Thank you.

09:22:15  5      Mr. Spellacy?

09:22:16  6              ATTORNEY SPELLACY:  No, Your Honor.

09:22:17  7              THE COURT:  Thank you.

09:22:17  8      I must now consider the relevant factors set out by

09:22:19  9  Congress at Title 18 United States Code Section 3553(a) and

09:22:24  10  ensure that I impose a sentence that is sufficient but not

09:22:29  11  greater than necessary to comply with the purposes of

09:22:32  12  sentencing.  These purposes include the need for the

09:22:34  13  sentence to reflect the seriousness of the crime, to promote

09:22:37  14  respect for the law, and to provide just punishment for the

09:22:40  15  offense.  The sentence should also deter criminal conduct,

09:22:44  16  protect the public from future crime by the defendant, and

09:22:47  17  promote rehabilitation.

09:22:47  18      In addition to the guidelines and policy statements, I

09:22:51  19  must also consider the nature and circumstances of the

09:22:53  20  offense, the history and characteristics of the defendant,

09:22:57  21  the need to avoid unwarranted sentencing disparities among

09:23:02  22  similarly situated defendants, and the types of sentences

09:23:05  23  available.

09:23:05  24      AUSA Joines, do you wish to argue about the

09:23:10  25  application of factors set forth in Section 3553(a) or

09:23:13  1    otherwise make a sentencing recommendation?

09:23:14  2             AUSA JOINES:  Yes, Your Honor.  Thank you.

09:23:16  3    May it please the Court.

09:23:17  4        Your Honor, the United States maintains its position

09:23:21  5    that Mr. Evans should be sentenced to a sentence of

09:23:24  6    incarceration no less than 100 months.  We would ask the

09:23:27  7    Court today, regardless of the guideline findings, to make

09:23:33  8    several other findings, I guess in substitution of each

09:23:36  9    other.

09:23:36  10       First, that Mr. Evans' sentence above the guidelines

09:23:40  11   is appropriate because a departure is warranted under the

09:23:43  12   guidelines.  Specifically, Section 4A1.3(a)(1), which we

09:23:49  13   briefed in our sentencing memorandum, summarizing it

09:23:52  14   briefly, is that Mr. Evans' criminal history of category V

09:23:56  15   does not represent his actual criminal history.

09:23:59  16       I won't go into the extensive details of what we

09:24:02  17   already briefed, but I will mention that his PSR lists seven

09:24:07  18   juvenile offenses and 16 adult offenses, many of which had

09:24:11  19   multiple charges attached to them.

09:24:14  20       His criminal history started when he was at the age of

09:24:17  21   13.  He's 36 now.  He's had multiple times where he's been

09:24:23  22   in prison for multiple years.  I count one offense where he

09:24:28  23   served four years, one offense where he served eight, and

09:24:31  24   then one offense where he served two.

09:24:34  25       Many of his offenses include having weapons under

09:24:37  1   disability.  He has three of those.  Those were often paired

09:24:41  2   with more violent offenses, so those having weapons under

09:24:44  3   disability did not themselves count for criminal history

09:24:46  4   points.  And also, many of his felonies, including several

09:24:49  5   of his aggravated robberies, did not count for criminal

09:24:52  6   history points because there were no intervening arrests.

09:24:55  7       All of these calculations are correct, but the

09:24:58  8   departure is appropriate in this case because even though

09:25:01  9   those calculations are correct, he still committed those

09:25:04  10  offenses, many of which were incredibly violent.

09:25:08  11      I'll highlight one from 2018, his felonious assault

09:25:11  12  conviction.  Part of the police reports state that he

09:25:17  13  approached two women with another female.  He hit one of

09:25:21  14  them and broke her nose.  He then shot at those two women as

09:25:24  15  they were running away.  A little boy received one of the

09:25:29  16  gunshots in his arm, fractured and shattered his bones in

09:25:32  17  his arm.  And another one of the women was shot while this

09:25:34  18  occurred.

09:25:35  19      In another case, he pushed an officer while he was

09:25:39  20  fleeing the scene after the car that he was in dropped off a

09:25:44  21  gunshot victim at MetroHealth Hospital.

09:25:47  22      There are numerous other felonies, numerous other

09:25:49  23  offenses, and I won't go into all of them, but suffice it to

09:25:52  24  say a departure in this case is appropriate.

09:25:54  25      Moving on to the 3553(a) factors, the United States is

09:25:59   1   also, in the alternative, asking for a variance upwards of

09:26:03   2   100 months because the 3553(a) factors mandate a sentence

09:26:07   3   greater than the guideline calculation that the Court found

09:26:10   4   of 46 to 57.  It also mandates a higher sentence than even

09:26:15   5   what the United States anticipated what the guideline would

09:26:17   6   be coming in, which was 70 to 87 months, or the guideline

09:26:21   7   that it would have been if both of those prior aggravated

09:26:23   8   robberies were crimes of violence and he was a criminal

09:26:28   9   history category VI, which would put his guideline at 77 to

09:26:30  10   96 months.

09:26:31  11        So we recognize that we're asking for a significant

09:26:34  12   variance from the guidelines.  All of the factors in 3553(a)

09:26:40  13   support that.

09:26:41  14        First, on the nature and circumstances of this

09:26:44  15   offense, it is a 922(g)(1), a firearm -- felon in possession

09:26:50  16   of a firearm.  It's not a crime of violence.  It's not a

09:26:53  17   situation where Mr. Evans is accused of hurting anyone

09:26:58  18   directly.  I won't go into how guns in the hands of felons

09:27:03  19   are a public safety hazard.  I know the Court knows that.  I

09:27:07  20   want to talk specifically about what Mr. Evans did on that

09:27:09  21   night when he was arrested.

09:27:10  22        He was seen by the officers conducting a hand-to-hand

09:27:15  23   transaction at a car.  In their training and experience they

09:27:19  24   believed it was a drug transaction.  They pull his car over.

09:27:22  25   They find the firearm inside the glove compartment.  He says

09:27:27   1   at first it's his brother's gun.  DNA evidence later shows

09:27:30   2   that not only was his DNA on the outside of the gun, it was

09:27:34   3   on the inside of the magazine.  The only way DNA can go on

09:27:38   4   the inside of the magazine is if somebody touches that

09:27:40   5   magazine or otherwise comes in contact with it.  He did more

09:27:44   6   than just touch it, as he said he did, and moved it to a

09:27:47   7   glove box.  It was his gun that night.

09:27:49   8        And regardless, later on that night, he also got into

09:27:54   9   several scuffles with officers who were just trying to book

09:27:58  10   him and process him in Cuyahoga County.  I summarized those

09:28:02  11   quotes in my brief.

09:28:04  12        With the Court's permission, I'd like to play three

09:28:07  13   video clips from his arrest that night, assuming we can get

09:28:10  14   the AV section to work.  They're each about a minute long.

09:28:13  15   And they show some of the statements that Mr. Evans made to

09:28:16  16   officers, including death threats that he would shoot them

09:28:18  17   and that if he could he would fight them despite the fact

09:28:21  18   that everything that he was being -- what he was saying to

09:28:24  19   them was on videotape.

09:29:02  20        (Video recording played.)

09:29:54  21             AUSA JOINES:  In case the audio was unclear,

09:29:57  22   at one point, at 43 minutes and 40 seconds into the video,

09:30:02  23   which -- of the total body cam which is United States

09:30:05  24   Exhibit 36, Mr. Evans stated, quote:  I should have shot you

09:30:09  25   in your face with that thing.

09:30:13   1          The second clip is from a few seconds later and is the

09:30:16   2   same conversation.

09:30:17   3          (Video recording played.)

09:31:05   4              AUSA JOINES:  And the operative quote in this

09:31:08   5   clip, Your Honor, which occurs at 45 minutes and 50 seconds

09:31:12   6   into the video, the totality of the exhibit -- of the video

09:31:17   7   36, quote:  You'll take these cuffs off, I'll punch you in

09:31:21   8   your fucking face.

09:31:22   9          And then shortly later:  I should have shot you in

09:31:24  10   your face.

09:31:33  11          And this last clip is from the same interaction

09:31:36  12   shortly after the last conversation.

09:31:41  13          (Video recording played.)

09:32:11  14              AUSA JOINES:  And the quote in that which

09:32:14  15   occurs at the 47 minute mark is, quote:  Put me in a cell

09:32:18  16   with you by myself.  I don't give a fuck about no camera.

09:32:22  17          That last quote I think is important.  And I'll come

09:32:24  18   back to this factor in the 3553(a) analysis, respect for the

09:32:28  19   law, respect for the officers who are trying to do their

09:32:31  20   jobs.  Obviously, threatening to shoot somebody in the face

09:32:33  21   is not something that we would ever condone, but it's even

09:32:38  22   worse when the person who's making these threats doesn't

09:32:41  23   care that it comes in front of the public on a video like

09:32:45  24   this and doesn't care that others will see it or that they

09:32:48  25   know what he's saying to them.  It's flouting of authority,

09:32:51  1   it's flouting of the justice sytem, it's flouting of the

09:32:56  2   seal behind Your Honor who is sitting in this Court in

09:32:59  3   Federal Court today.

09:33:00  4       The nature and circumstances of this offense are not a

09:33:03  5   simple run-of-the-mill possession of a firearm.  Mr. Evans

09:33:06  6   exacerbated the situation.  He made it worse.

09:33:08  7       And moving into the characteristics of the defendant,

09:33:12  8   his actions on that night when he was arrested are

09:33:16  9   consistent with his history of violent felonies, of getting

09:33:20  10  into trouble, not just for ticky-tacky misdemeanors or F5

09:33:26  11  offenses.  His conviction record is lengthy.  It's one of

09:33:31  12  the longest that I've seen, and I've not been here for too

09:33:34  13  long, but I've -- he has a lot of convictions, and they're

09:33:36  14  very serious felonies, involving armed robbery, aggravated

09:33:40  15  robbery, felonious assault, not just possessing guns but

09:33:44  16  using them.

09:33:47  17      The threat that he made that night might be emptier if

09:33:53  18  it came from someone who does not have a history of shooting

09:33:56  19  at people fleeing from him, who does not have a history of

09:33:58  20  hitting people, bystanders, who are not even involved in the

09:34:02  21  issue that he was charged with.

09:34:07  22      His history of criminal actions, of attacking people,

09:34:12  23  of using guns, establish a pattern of actions that go

09:34:20  24  against the rules and the common fabric that we hold in

09:34:23  25  society.  We don't condone these types of behavior from

09:34:27   1   anyone, but it's worse when it's somebody who has such a

09:34:30   2   lengthy history, who has had chance after chance to change

09:34:35   3   their pattern of behavior, to not hold guns, to not use

09:34:41   4   those guns, and decide that's not the -- that's not the path

09:34:45   5   that they want to take.

09:34:46   6        On that point, Your Honor, his prior sentences of

09:34:53   7   four, eight, and two years, those are just some of his

09:34:55   8   periods of incarceration, but none of those, whether in

09:34:58   9   totality or individually, deterred him from possessing

09:35:01   10   firearms again, from engaging in additional violent acts

09:35:06   11   after he was released.  He has a pattern of leaving prison

09:35:11   12   and then just committing another felony, often a violent

09:35:14   13   one.

09:35:15   14        The criminal history that he has shows that he's not

09:35:18   15   amenable to changing.  He's had the opportunities to change

09:35:23   16   his path on multiple occasions, but the nature and

09:35:27   17   characteristics of who he is as a person show that he's not

09:35:30   18   willing to do that.

09:35:32   19        I recognize that Mr. Evans has had a troubled

09:35:36   20   childhood.  His sister passed away I think about 20 years

09:35:41   21   ago now, maybe even longer, and that according to some of

09:35:45   22   his family members, that sent him in a bad direction, I

09:35:49   23   think is probably the best way to say it.

09:35:52   24        I don't -- I think the Court should consider that.  I

09:35:54   25   think the Court should analyze who Mr. Evans is as a person.

09:35:59  1    But Mr. Evans' troubles, for as many as he had, do not

09:36:03  2    excuse his repeated violent confrontations with both the

09:36:06  3    public and with officers of the law.

09:36:12  4         Your Honor, when the Court weighs the 3553(a) factors,

09:36:15  5    it also needs to weigh not just who Mr. Evans is but also

09:36:20  6    the public's need for punishing the offense that he

09:36:27  7    committed, to reflect that seriousness of the offense, to

09:36:29  8    promote respect for the law, provide just punishment.  All

09:36:33  9    of these factors also weigh in favor of a sentence greater

09:36:36  10   than the guideline range in this case.

09:36:39  11        As I already mentioned, Mr. Evans decided that he

09:36:43  12   would make threats to officers, and he didn't care if they

09:36:46  13   were video recorded.  He doesn't care about what the police

09:36:49  14   see.  He doesn't care about what the public sees.  He just

09:36:52  15   wants people to know that he's going to make threats.  And

09:36:54  16   as we've seen in his history, he often makes good on those

09:36:57  17   threats.

09:36:57  18        When he's been incarcerated on multiple occasions, and

09:37:02  19   this is specifically in paragraphs 34 and 40 of the PSR, he

09:37:08  20   had multiple rule infractions.  It wasn't just being out of

09:37:11  21   place, disobeying direct orders, disrespecting officers,

09:37:15  22   possessing contraband.  He also made inappropriate sexual

09:37:19  23   gestures to female corrections officers and was affiliated

09:37:22  24   with the Heartless Felons, a violent criminal gang, despite

09:37:25  25   saying that he was not affiliated with them anymore.

09:37:31  1          Mr. Evans has taken this step to land himself in

09:37:34  2     Federal Court today because he again chose to carry a gun

09:37:36  3     despite knowing full well that he was not allowed to do so.

09:37:43  4          In this situation, Your Honor, I think many of the

09:37:47  5     defendants that come before this Court, they possess the

09:37:50  6     guns but they don't have a history of using them.  It's

09:37:52  7     still a felony.  It's still a violation of the public trust.

09:38:00  8     It still should be punished.  But those offenses should not

09:38:04  9     be punished in the same way as somebody who not only

09:38:07  10    possesses those guns but has used them and threatens to use

09:38:09  11    them in the future.  That possesses a far greater public

09:38:16  12    safety risk than somebody who simply possesses a gun, does

09:38:20  13    not have that history, does not make those same threats.

09:38:22  14          So in total, if the Court does decide to sentence

09:38:27  15    Mr. Evans above the guidelines, we would request two

09:38:29  16    findings:  One, that a departure is appropriate and, two, in

09:38:33  17    the alternative, that a variance is also appropriate even if

09:38:36  18    the Court did not find a departure, and vice versa.

09:38:39  19          Thank you.

09:38:40  20               THE COURT:  Thank you.

09:38:41  21     Mr. Spellacy.

09:38:42  22               ATTORNEY SPELLACY:  Thank you, Judge.

09:38:42  23     Your Honor, first of all, had we proceeded at

09:38:51  24    sentencing the day it was first set, I believe which was

09:38:54  25    April 25 of '23, my client would have found himself in a

09:39:01  1    situation where his sentencing range would have been, if I'm

09:39:06  2    correct, 24 to 30 months.  That sentencing got continued

09:39:12  3    twice, once at my request and once at a joint request, I

09:39:17  4    believe.  Either one of those two first sentencings we

09:39:21  5    wouldn't have been in the situation we found ourselves in in

09:39:25  6    June because the *Carter* case changed that for us.

09:39:30  7         So had we proceeded, and as I told my client at the

09:39:34  8    time where he was going to land, our first two presentence

09:39:39  9    reports put him at a criminal history V, which he stayed at

09:39:44  10   consistently, and a level 14 without acceptance at the time,

09:39:48  11   I believe.  I may be incorrect, but I thought we had the

09:39:52  12   three levels after that.

09:39:53  13        So it's hard for -- he's having a hard time

09:39:59  14   understanding how he finds himself in a very different

09:40:03  15   situation when the first two presentence reports came out

09:40:08  16   the way they did.  And really, through no fault of his own,

09:40:18  17   right?  He's sitting in CCA, and whether it was -- I was in

09:40:21  18   trial or whatever the case may be, and if I have to own it,

09:40:23  19   I'll own it, but it was through no fault of his own that he

09:40:26  20   ends up a case comes out and changes his life, so to speak,

09:40:31  21   right?

09:40:31  22        So because at the time, the Government did object to

09:40:37  23   the presentence report, and the author of the presentence

09:40:42  24   report said, no, you're not correct, and we agreed with that

09:40:45  25   at the time.  It wasn't till the case law changed that his

09:40:53  1  guidelines changed.  And it was -- again, I would just say

09:40:56  2  it was subsequent to his sentencing dates.

09:40:59  3      And for those reasons, I'd ask the Court -- I'd ask

09:41:03  4  you, one, to consider that as what I think should be his

09:41:09  5  actual levels, but, more importantly, if you do decide you

09:41:12  6  want to vary or depart, they've got it built in with the one

09:41:22  7  finding.  I mean, you've -- if you were to just keep it

09:41:26  8  where you have it today, right, it would be 46, I believe,

09:41:29  9  to 57 months, which would still be 20 months more than what

09:41:33  10  I would have calculated it at.  So it would already be

09:41:38  11  there.

09:41:38  12      But obviously it's hard to argue with any of the video

09:41:42  13  clips, but I would just say this:  The guidelines are

09:41:45  14  already built in for all of this.  I mean, none of this is

09:41:47  15  new, right?  I've done this for 34 years.  Is this the worst

09:41:51  16  form of what I've seen in 34 years of practicing law?

09:41:55  17  Absolutely not, right?  I mean, so the guidelines have this

09:41:59  18  already built into it.

09:42:00  19      If there was a specific section that said if you

09:42:05  20  threaten the officer after the fact, add 2 points, then I

09:42:09  21  might be able to agree with them.  But this is daily

09:42:13  22  behavior, unfortunately.  Doesn't make it right, but it is

09:42:15  23  daily behavior in county jail and Cleveland jail.

09:42:21  24      So is it disturbing?  At this point in my career, not

09:42:25  25  really.  I hate to say it.  I mean, it's just what happens

09:42:28    1    every day.  And the officer did a really good job of trying

09:42:33    2    to deescalate, right, because that's what they're trained to

09:42:36    3    do.  Because he knows that's what's happening as well.

09:42:38    4        If he had reached for the glove box and for the gun on

09:42:42    5    the streets, then I'd give maybe some credibility to his

09:42:45    6    story, right?  But that didn't happen.  He didn't reach for

09:42:49    7    it.  He didn't go towards the glove box and get the gun.

09:42:53    8    And in fact, he did say:  I put the gun in the glove box at

09:42:57    9    some point in time because it was my brother's gun.

09:42:59   10        I could argue DNA with him all day long because I've

09:43:02   11    done it for -- you know, there's touch DNA, there's transfer

09:43:06   12    DNA, there's all kinds of DNA.  But for that one conclusion

09:43:10   13    I would suggest is not reasonable.

09:43:11   14        Judge, obviously I'll end with this.  His criminal

09:43:16   15    history is what it is.  The level is what it is.  It's

09:43:20   16    significant, it's substantial.

09:43:22   17        He lost his sister 20 years ago.  He lost another

09:43:25   18    sister while he was in here.  If you recall, I asked the

09:43:27   19    Court to consider letting him out and you didn't.  We

09:43:29   20    respect that.  He's going to lose his mother here next, and

09:43:33   21    he'll lose her while he's incarcerated probably with

09:43:37   22    whatever sentence you give him.  So I'd ask you to consider

09:43:40   23    those things.

09:43:40   24        I know that he'd like to address the Court well.

09:43:42   25        Again, I just tell you, Judge, he's having a very

09:43:45  1  difficult time understanding from his perspective how he got

09:43:50  2  to where he is when the levels were different had he been

09:43:54  3  sentenced back in April.  And I'd just ask you again to

09:43:57  4  think about that when you sentence him.

09:43:59  5           THE COURT:  Yes, but the Government has always

09:44:01  6  pursued the argument that these robberies, the aggravated

09:44:04  7  robbery and the robbery, were crimes of violence.

09:44:07  8           ATTORNEY SPELLACY:  I agree, Judge, but the

09:44:08  9  presentence reporters disagreed.

09:44:12  10           THE COURT:  Correct, based upon the ever

09:44:14  11  evolving case law within the circuit.

09:44:16  12           ATTORNEY SPELLACY:  Right.  And so, again, my

09:44:18  13  point is, had he been sentenced then, the case law wouldn't

09:44:22  14  have evolved, right?  And through no fault of his own, he

09:44:25  15  finds himself in a situation where the case law evolved.

09:44:28  16  And so had he somehow delayed the events, I would say,

09:44:36  17  that's on him.  But I don't know how it's on him at this

09:44:39  18  point in time, to be quite honest and to be fair to him,

09:44:42  19  right?  And that's why I said, if it's got to be on me, I'll

09:44:47  20  take that responsibility because if I was in trial and had

09:44:49  21  to continue a sentencing, then that's what I had to do.  But

09:44:52  22  I can't be at two places at once, right?

09:44:54  23       But, again, it's no fault of his own that that

09:44:57  24  changed, right?  And he -- so all along I'm giving advice --

09:45:00  25  and I hope, you know, the rest of them can appreciate this,

09:45:03  1   but we're giving advice based on the time that we have it,

09:45:06  2   what's in front of us, and we give -- and as I tried to

09:45:10  3   suggest to the Court back in June, I tried to give him my

09:45:15  4   best advice at the time, and at the time I was right.  The

09:45:17  5   case law changed, and apparently I'm wrong now.  It could

09:45:20  6   change again, and I could be right again.  And, but that

09:45:24  7   shouldn't be to his detriment.

09:45:27  8        I can understand if he did something, again, to delay

09:45:30  9   his sentencings.  I mean, he accepted responsibility timely,

09:45:34  10  he cooperated with Pretrial.  He did the rest of the things

09:45:37  11  he was supposed to do.

09:45:39  12       So I know that he would like to address the Court,

09:45:41  13  Judge.  Thank you.

09:45:42  14            THE COURT:  Thank you.

09:45:42  15       Mr. Evans, you may certainly do so.

09:45:44  16            THE DEFENDANT:  My name is Kenneth Evans.

09:45:47  17       You know, I know I had a troubled past as a young kid,

09:45:54  18  but, you know, I was working toward changing that.  You

09:45:56  19  know, I was staying with my mom when I was just out, before

09:45:58  20  I got locked up.  You know, I was working.  I wasn't doing

09:46:04  21  nothing that, you know, that involved any type of criminal

09:46:08  22  nothing.  Like, I was taking -- helping take care of my

09:46:11  23  sister before she passed away.  You know, my mother's sick.

09:46:14  24  You know, I was helping, like, I was doing everything that I

09:46:17  25  was supposed to do as a man.  You feel me?  I was taking

09:46:18   1    care of my kids.  You feel me?  I was -- like, when I say

09:46:22   2    this was the first time I ever had a job in my life, I was

09:46:25   3    literally turning my life around trying to do the right

09:46:27   4    thing.

09:46:28   5       And all because I get pulled over and the police

09:46:36   6    making, you know -- you know, false statements and doing all

09:46:41   7    type of stuff and egging me on to do the things that I did,

09:46:46   8    I wasn't really going to do the things that I said.  I was

09:46:48   9    just angry at the time.  And if -- you know, an angry person

09:46:53  10    will say cruel things.  Like, you know, if he was here, I'd

09:46:57  11    apologize to him if I could.  You feel me?  Like, but he's

09:47:00  12    not here right now, but it's on record that I would like to

09:47:03  13    apologize to that officer if I could.

09:47:05  14       Like, I'm trying to go home to be, you know -- to be a

09:47:09  15    father to my kids.  I got an 18-year-old son and I got a

09:47:14  16    5-year-old daughter.  My mother's 67 years old.  She's got

09:47:18  17    heart problems.  You know, I got health issues.  Like, I'm

09:47:21  18    trying to be home for my mother because I wasn't there to

09:47:24  19    help her with my sister because of the situation that I'm in

09:47:26  20    right now.

09:47:27  21       I just did 10 months in a state jail for this same --

09:47:34  22    for this same case that I'm in here for right now.  I'd just

09:47:37  23    like -- I feel like -- like, when I'm trying to do right, it

09:47:41  24    seems like the only thing people want to see is me do wrong.

09:47:46  25    And I'm not trying to do that.  Like, when I was in -- where

09:47:51   1   I'm at right now, I got over I think it's like 80 some

09:47:55   2   certificates.  Like, I got anger management, I got Cage Your

09:48:03   3   Rage certificates, I got CPR certificates, I got

09:48:06   4   certificates to be a motivational speaker, I got

09:48:09   5   certificates to be a mentor, I got certificates to do --

09:48:13   6   like, to do everything to help change the community, to help

09:48:15   7   change the youth.

09:48:16   8       You know, I'm on -- like, I take mental health

09:48:19   9   medication.  I take my meds every day.  Like, right now I'm

09:48:23  10   off my meds right now.  Like, but at the end of the day, you

09:48:27  11   feel me, like, that's no excuse.  You feel me?  My actions

09:48:31  12   is my actions.  You know, I took responsibility even though

09:48:33  13   that it was a gun in the car that I was in.  Okay, yeah, I

09:48:39  14   took responsibility for that.  But I've been already been

09:48:42  15   given time for this.

09:48:43  16       And I just want to go home to be with my mother before

09:48:45  17   she passes away.  That's all I'm asking for.  That's it.

09:48:49  18   Like, I ain't asking for nothing else.  I just want to be

09:48:52  19   home with my mother.  That's all I ever ask, like.

09:48:57  20       And if the way he -- the way the prosecutor is

09:49:02  21   talking, if you sentenced me to the time that he's asking, I

09:49:06  22   might not even be able to see my mother before she passes

09:49:11  23   away.  I just like -- I just want to go home.  That's it.

09:49:14  24       Like, I've been trying to stay out of trouble.  Like,

09:49:17  25   I've been stabbed and everything since I've been in jail.

09:49:19  1  Like, I got a cyst on my kidneys.

09:49:23  2  Man, I just want to go home so I can be with my

09:49:26  3  family.  That's it.  This is too much.  Like, I've been

09:49:31  4  trying to do the right thing.  I stay out of trouble,

09:49:35  5  anything like, and it's just, like, I don't -- I don't

09:49:39  6  understand, like, where am I going wrong at, like.  And it's

09:49:42  7  just -- it's just -- it's just constantly just eating me

09:49:46  8  alive.

09:49:46  9  Like, I don't know -- I've been asking for help, and

09:49:50  10  it seems like don't nobody want to help me.  Like, I don't

09:49:54  11  know what -- I just don't know what else to do.  But then,

09:49:57  12  like, man, I done even tried to kill myself and everything,

09:50:01  13  man.  Like, it's just too much, man.

09:50:03  14  I'm just -- I just want to go home.  That's all I'm

09:50:06  15  asking, if I could just go home.

09:50:12  16  THE COURT:  Thank you.

09:50:16  17  Mr. Spellacy?

09:50:16  18  ATTORNEY SPELLACY:  Nothing else, Judge.

09:50:18  19  THE COURT:  Mr. Joines, any final statement?

09:50:20  20  AUSA JOINES:  Your Honor, I would only say

09:50:31  21  that the guidelines calculation at the end of the day is in

09:50:35  22  the hands of the Court.  Regardless of what the Sixth

09:50:38  23  Circuit says, this Court obviously takes into account what

09:50:40  24  the case law is at the time.

09:50:42  25  But had Mr. Evans been sentenced earlier, the Court

09:50:45  1    could have found the same that it did today.  It could have

09:50:47  2    found the same had it made the determinations prior to the

09:50:53  3    *White*, *Beard*, and *Porter* decisions.

09:50:56  4        The guideline range changes should not deter the

09:50:59  5    Court, or distract the Court, rather, from the 3553(a)

09:51:02  6    factors that have been discussed here.  That is the driver

09:51:06  7    for the sentence today.  And I would request that the Court

09:51:11  8    use those factors and not the moving target of the

09:51:16  9    guidelines in rendering its decision.  Thank you.

09:51:18  10            THE COURT:  All right.  Thank you.

09:51:19  11        I know I received sentencing disparity information

09:51:23  12    associated with the calculations in the PSR which were for a

09:51:27  13    level 21 and a criminal history category V.  Do you know

09:51:31  14    what those sentencing disparity information is associated

09:51:34  15    with what the Court determined is the total offense level of

09:51:39  16    17 with a criminal history category V?

09:51:42  17            PROBATION OFFICER SHANNON:  Your Honor,

09:51:43  18    offhand I do not.

09:51:44  19            THE COURT:  Okay.  I know with the criminal

09:51:48  20    history category of V and a total offense level of 21, the

09:51:58  21    average length of imprisonment was 66 months and the median

09:52:02  22    length of imprisonment was 70 months.  That's in the PSR.

09:52:06  23        All right, thank you.  We can assume, though, that it

09:52:10  24    would be less, both the average and the median, correct?

09:52:12  25            PROBATION OFFICER SHANNON:  Correct, Your

09:52:14  1  Honor.

09:52:14  2  THE COURT:  All right.  Thank you.

09:52:19  3  Speaking about the nature and circumstances of the

09:52:24  4  offense first, I understand that the defendant pled guilty

09:52:28  5  to felon in possession of firearm and ammunition after

09:52:33  6  having been stopped.  A traffic stop actually took place in

09:52:39  7  October of 2021, and it was at that time that the defendant

09:52:42  8  was found in possession of a firearm.  A small amount of

09:52:48  9  marijuana was found in the vehicle as well as an open bottle

09:52:50  10  of alcohol, which is sort of a dangerous combination when

09:52:54  11  you're driving with alcohol open and marijuana with a gun in

09:52:57  12  the car.

09:52:59  13  I think it is very telling, and the Court must

09:53:04  14  consider what occurred afterward, and it's well shown by the

09:53:07  15  videos that were played here today by AUSA Joines in terms

09:53:11  16  of the threats made to the officers that were just trying to

09:53:14  17  do their jobs.  And those quotes have already been placed on

09:53:19  18  the record by Mr. Joines and are evident in the videos as

09:53:24  19  well, but the key one in this Court's mind is, "I should

09:53:27  20  have shot you in your face."

09:53:29  21  Again, I agree with Mr. Joines that that is showing a

09:53:34  22  total disrespect for the law and the law enforcement

09:53:36  23  officers that our society uses to enforce the law and to

09:53:40  24  protect all of us from crime.  And so certainly the sentence

09:53:46  25  that I impose must reflect the importance of respect for the

09:53:49  1   law and try to ensure that Mr. Evans does that going

09:53:54  2   forward.

09:53:54  3       I know that Mr. Evans said that the police were making

09:54:00  4   false statements to egg him on — I think I have that quote

09:54:03  5   correct — as though putting blame for the police officers

09:54:07  6   that were trying to speak with him.  Although that's in

09:54:11  7   direct contrast to his lawyer, Mr. Spellacy, interpreting

09:54:14  8   that exchange as the officers doing a good job or handling

09:54:18  9   him well to try to deescalate the situation.

09:54:21  10      Although I will acknowledge that Mr. Evans stated

09:54:23  11  after he made that statement that if they were here, he

09:54:26  12  would apologize to them.  But certainly, he did exacerbate

09:54:32  13  the situation by making those comments to the police

09:54:34  14  officers that were just trying to do their job at the time

09:54:36  15  that he was arrested.

09:54:38  16      In terms of the history and characteristics of the

09:54:42  17  defendant, I understand Mr. Evans is 36 years old, and he

09:54:46  18  does have criminal juvenile history adjudications, I should

09:54:50  19  say, dating back to the age of 13, including eight

09:54:53  20  adjudications for attempted burglary, receiving stolen

09:54:56  21  property, possession of cocaine, possessing criminal tools,

09:55:02  22  drug abuse, menacing, truancy, and unruly.  He also has 14

09:55:11  23  adult criminal convictions dating back to the age of 18,

09:55:13  24  including 11 felony convictions for aggravated robbery,

09:55:18  25  there were two aggravated robbery convictions, having

weapons while under disability, three convictions for that,

robbery, aggravated riot, felonious assault, and discharge

of a firearm on or near prohibited premises.  He has also

three misdemeanor convictions including offenses of

disorderly conduct, drug abuse, and no valid driver's

license.

He did receive several post-release control violations

which led to revocations and imprisonment sentences due to

not obeying the rules of supervision.  And of course he was

on post-release control supervision with the Ohio Adult

Parole Authority when he committed the instant offense.

And as Mr. Joines pointed out, despite denying, he has

been identified as a member of the Heartless Felons gang,

which is a very dangerous gang that operates not only in the

prisons here in Ohio but on the streets of Cleveland.

Now, in terms of his upbringing and some of the

obstacles that he faced, I know that he was raised by his

mom in Cleveland, Ohio, and he has not had any contact with

his father since he was a child.  And he reported to the PSR

writer having a difficult childhood.

His mom was the main provider for the family, and she

worked two jobs on a regular basis which I assume took her

away from him and his siblings.  I do know that Mr. Evans'

sister, one of his sisters, did pass away in 2001 from a

chronic illness that required ongoing monitoring.  And also,

09:56:54 1   his youngest sister was diagnosed with brain cancer, and

09:56:59 2   this then is the sister that passed away more recently.

09:57:01 3       Is that correct, Mr. Spellacy, Mr. Evans?

09:57:04 4               THE DEFENDANT:  Yes.

09:57:04 5               THE COURT:  All right.  So two siblings

09:57:07 6   passing away certainly is a difficult situation and I'm sure

09:57:14 7   was traumatic for Mr. Evans.

09:57:15 8       Now, I understand, too, that Mr. Evans has never been

09:57:18 9   married, and he does have two children as he's explained,

09:57:22 10  ages 18 and 5.

09:57:23 11      He's been diagnosed with attention deficit

09:57:26 12  hyperactivity disorder and posttraumatic stress disorder,

09:57:30 13  although he did not experience any form of physical or

09:57:33 14  sexual abuse during his childhood.

09:57:35 15      And he did receive mental health treatment at

09:57:40 16  Applewood Centers in Cleveland as a child.  And he

09:57:42 17  represents or represented to the PSR writer that he did not

09:57:45 18  believe that he would benefit from any further mental health

09:57:47 19  treatment, although he's already acknowledged that he has

09:57:51 20  been on mental health medication although he's not on it

09:57:54 21  apparently today.

09:57:55 22      Mr. Evans does have an extensive substance abuse

09:57:58 23  history beginning with the use of marijuana at the age of

09:58:01 24  12.  He also frequently abused alcohol, cocaine,

09:58:06 25  methamphetamine, and Percocet.  And he reported that he used

09:58:08  1  drugs due to the stress in his life.  And he's never

09:58:11  2  received any form of drug and alcohol treatment, and he did

09:58:15  3  indicate or express a desire to receive such treatment.

09:58:18  4      I understand that Mr. Evans dropped out of high school

09:58:21  5  in the eleventh grade and has not earned his GED.  He does

09:58:24  6  not have a stable employment history.  And prior to the

09:58:28  7  arrest in this case, he was being supported by his mom

09:58:31  8  financially.  And according to the PSR, he's only held one

09:58:36  9  job during his adult life.

09:58:37  10      Certainly, the criminal convictions and the nature of

09:58:44  11  them, the violent offenses that he's committed, numerous

09:58:48  12  ones, indicate that the sentence this Court imposes must

09:58:52  13  serve to protect the public from future crime by Mr. Evans,

09:58:58  14  and it also must punish him for continuing to possess a gun

09:59:03  15  despite these violent prior criminal offenses.

09:59:09  16      It does -- this offense does represent, again, a

09:59:13  17  disregard for the law and appears to indicate that he's not

09:59:15  18  necessarily amenable to change, although Mr. Evans has

09:59:18  19  stated today that that's what he has been trying to do by

09:59:22  20  taking courses, getting certificates, et cetera, to try to

09:59:26  21  improve and do better, so to speak.  He's certainly been

09:59:30  22  involved in taking care of his mom, who in turn supports him

09:59:33  23  financially, and I believe helping with his sister, too,

09:59:37  24  when -- she was the one diagnosed with cancer more recently.

09:59:44  25      Now, I also need to deter Mr. Evans from future

09:59:50   1   criminal conduct because the sentences that have been

09:59:54   2   imposed, the terms of imprisonment, as highlighted by AUSA

09:59:58   3   Joines, has not deterred him. So the sentence needs to

10:00:01   4   deter him. And I do believe that the sentence that I impose

10:00:10   5   will do just that.

10:00:11   6        I understand the reason for your recommendation,

10:00:14   7   Mr. Joines, for an upward departure indicating or arguing

10:00:18   8   that his criminal history category is underrepresented.

10:00:23   9   I've read that in your sentencing memorandum. I

10:00:26  10   understand -- it was well stated today. And I understand

10:00:29  11   your argument that even if the Court does not depart upward,

10:00:33  12   that it should vary upward because of the nature and

10:00:36  13   circumstances of the defendant. In other words, throughout

10:00:40  14   most of the course of his life he's been engaged in criminal

10:00:44  15   activity and much of it being very violent. And you well

10:00:49  16   describe what's included in the PSR in terms of the one

10:00:52  17   offense where he hurts a small boy. He also shot at two

10:00:56  18   women fleeing, et cetera. The Court is well aware of that.

10:01:00  19        But I also have to consider the mitigation as well and

10:01:05  20   the sentencing disparity information --

10:01:09  21        Yes?

10:01:11  22             PROBATION OFFICER MORGAN: Would you like to

10:01:14  23   hear the sentencing disparity information, Your Honor?

10:01:15  24             THE COURT: Yes.

10:01:21  25             PROBATION OFFICER MORGAN: The average length

10:01:22  1   of imprisonment was 44 months, median length of imprisonment

10:01:26  2   was 46 months, for a 17 and a V.

10:01:43  3          THE COURT:  So to make sure that my sentence

10:01:45  4   deters Mr. Evans from committing future criminal conduct, to

10:01:51  5   promote respect for the law that he does not seem to have or

10:01:54  6   did not have at the time of his arrest, maybe he's making

10:01:56  7   progress in that regard, but certainly as evidenced by the

10:01:59  8   videos and the fact that he was -- did have the gun despite

10:02:03  9   these prior convictions, I need to -- the sentence needs to

10:02:08  10  promote respect for the law.  I need to protect the public

10:02:11  11  from future crime by Mr. Evans.  I also need to punish him

10:02:14  12  for continuing to engage in criminal conduct.

10:02:17  13      I am taking into account the mitigating factors in

10:02:20  14  terms of his childhood, the trauma, the PTSD, the physical

10:02:25  15  and mental issues, as well as the loss of his siblings and

10:02:31  16  apparently his love for his mom who he helps take care of.

10:02:37  17      But it's considering all of these things that I'm not

10:02:40  18  going to depart or vary upward, but I am going to impose a

10:02:43  19  sentence at the highest end of the guidelines range, which

10:02:47  20  is 57 months.  And that also takes into account the

10:02:50  21  sentencing disparity information.

10:02:52  22      And I don't think that in this situation, based upon

10:02:54  23  what AUSA Joines has pointed out, that's well documented in

10:02:58  24  the PSR, that a median or average sentence per the

10:03:03  25  guideline, the disparity information, sentencing disparity

10:03:06  1  information, is sufficient.  But I do believe that the 57

10:03:09  2  months is sufficient but not greater than necessary to

10:03:11  3  comply with the purposes of sentencing.

10:03:13  4  Therefore, pursuant to the Sentencing Reform Act of

10:03:16  5  1984 and 18 United States Code Section 3553(a), it is the

10:03:21  6  judgment of the Court that the defendant, Kenneth Evans, is

10:03:24  7  hereby committed to the custody of the Bureau of Prisons for

10:03:25  8  a term of 57 months.

10:03:28  9  Upon release from imprisonment, you shall be placed on

10:03:30  10  supervised release for a term of three years.

10:03:33  11  Within 72 hours of release from the custody of the

10:03:35  12  Bureau of Prisons you shall report in person to the United

10:03:39  13  States Pretrial Services and Probation Office in the

10:03:41  14  sentencing district or in the district to which you are

10:03:43  15  released.

10:03:44  16  Based on a review of the defendant's financial

10:03:46  17  condition as set forth in the presentence report, the Court

10:03:50  18  finds that the defendant does not have the ability to pay a

10:03:52  19  fine.  The Court therefore waives the fine in this case.

10:03:55  20  However, Mr. Evans must pay to the United States a

10:03:58  21  special assessment of $100 which is due immediately.

10:04:00  22  While on supervision you must comply with the

10:04:03  23  mandatory and standard conditions that have been adopted by

10:04:05  24  this Court and set forth in part D of the investigation

10:04:09  25  report, and you must comply with the following additional

conditions:

You must refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release from imprisonment and to at least two periodic drug tests thereafter as determined by the Court.

You shall participate in an approved program of substance abuse testing and/or outpatient or inpatient substance abuse treatment as directed by your supervising officer and abide by the rules of the treatment program.

The probation officer will supervise your participation in the program to include provider, location, modality, duration, intensity, et cetera.

The defendant shall not obstruct or attempt to obstruct or tamper in any fashion with the efficiency and accuracy of any prohibited substance testing.

You must undergo a mental health evaluation and/or participate in a mental health treatment program and follow the rules and regulations of that program.

The probation officer, in consultation with the treatment provider, will supervise your participation in the program to include provider, location, modality, duration, intensity, et cetera.

You must submit your person, property, house, residence, vehicle, papers, office to a search conducted by a United States probation officer.  Failure to submit to a

10:05:19  1    search may be grounds for revocation of release.

10:05:23  2        You must warn any other occupants that the premises

10:05:25  3    may be subject to search pursuant to this condition.

10:05:27  4        The probation officer may conduct a search under this

10:05:30  5    condition only when reasonable suspicion exists that you

10:05:34  6    have violated a condition of supervision and that the areas

10:05:37  7    to be searched contain evidence of this violation.  Any

10:05:40  8    search must be conducted at a reasonable time and in a

10:05:43  9    reasonable manner.

10:05:43  10       You must also enter an adult program and work toward

10:05:48  11   obtaining a General Educational Development diploma at the

10:05:51  12   discretion of the U.S. Pretrial Services and Probation

10:05:55  13   officer.

10:05:56  14       You must not communicate or otherwise interact with

10:05:58  15   any known member of the Heartless Felons gang without first

10:06:01  16   obtaining the permission of the probation officer.

10:06:03  17       You must meet any legal obligation to support or make

10:06:06  18   payment toward the support of any person, including any

10:06:10  19   dependent child, the coparent or caretaker of a dependent

10:06:14  20   child, or spouse or former spouse.

10:06:21  21       Now I would like to advise of your appellate rights,

10:06:24  22   Mr. Evans.  You can appeal your conviction if you believe

10:06:27  23   that your guilty plea was somehow unlawful or involuntary or

10:06:30  24   if there is some other fundamental defect in the proceedings

10:06:33  25   that was not waived by your guilty plea.  Under some

10:06:36  1  circumstances, a defendant also has the right to appeal the

10:06:38  2  sentence.

10:06:39  3     Any notice of appeal must be filed within 14 days of

10:06:42  4  the entry of judgment or within 14 days of the filing of a

10:06:45  5  notice of appeal by the Government.  If requested, the Clerk

10:06:48  6  will prepare and file a notice of appeal on your behalf.

10:06:50  7     If you cannot afford to pay the cost of an appeal or

10:06:53  8  for appellate counsel, you have the right to apply for leave

10:06:56  9  to appeal *in forma pauperis*, which means you can apply to

10:06:58  10  have the Court waive the filing fee.

10:07:01  11     On appeal you may also apply for court-appointed

10:07:05  12  counsel.

10:07:05  13     I will make a recommendation to the BOP that you be

10:07:09  14  given credit for all time served relative to this matter.

10:07:12  15     Is there a request for BOP placement, Mr. Spellacy?

10:07:19  16         (Attorney-client conference.)

10:07:20  17         ATTORNEY SPELLACY:  Judge, Elkton.

10:07:23  18         THE COURT:  Elkton?

10:07:23  19         ATTORNEY SPELLACY:  Thank you.

10:07:24  20         THE COURT:  We'll make that recommendation to

10:07:25  21  the BOP.  Ultimately, it's up to the BOP.

10:07:27  22     Any forfeiture, Mr. Joines?

10:07:29  23         AUSA JOINES:  Your Honor, the United States --

10:07:31  24  I was looking at the record.  We have not filed a motion for

10:07:36  25  preliminary order of forfeiture.  I can make that motion at

| | | |
|---|---|---|
| 10:07:39 | 1 | the time, right now? |
| 10:07:40 | 2 | THE COURT:  Yes. |
| 10:07:41 | 3 | AUSA JOINES:  If that's okay with the Court? |
| 10:07:42 | 4 | THE COURT:  Any objection, Mr. Spellacy? |
| 10:07:43 | 5 | ATTORNEY SPELLACY:  No objection, Your Honor. |
| 10:07:44 | 6 | THE COURT:  Thank you. |
| 10:07:48 | 7 | AUSA JOINES:  The United States would move |
| 10:07:49 | 8 | to -- that the firearm identified in the indictment, |
| 10:07:54 | 9 | specifically the Cobra Model FS 380 bearing serial number FS |
| 10:08:10 | 10 | 063591, and related ammunition, be forfeited to the United |
| 10:08:13 | 11 | States as alleged in the indictment. |
| 10:08:16 | 12 | THE COURT:  Thank you. |
| 10:08:17 | 13 | Any objection, Mr. Spellacy? |
| 10:08:18 | 14 | ATTORNEY SPELLACY:  No objection, Your Honor. |
| 10:08:19 | 15 | THE COURT:  That motion is granted.  That will |
| 10:08:21 | 16 | be included in the judgment.  Thank you. |
| 10:08:23 | 17 | And any objections, Mr. Joines? |
| 10:08:25 | 18 | AUSA JOINES:  No additional objections.  Thank |
| 10:08:27 | 19 | you, Your Honor. |
| 10:08:27 | 20 | THE COURT:  Thank you. |
| 10:08:28 | 21 | Any objection, Mr. Spellacy? |
| 10:08:30 | 22 | ATTORNEY SPELLACY:  No, Your Honor. |
| 10:08:31 | 23 | THE COURT:  All right.  Thank you. |
| 10:08:32 | 24 | The defendant is ordered remanded to the custody of |
| 10:08:34 | 25 | the U.S. Marshal. |

10:08:35  1          Thank you.

10:08:36  2                    (Proceedings adjourned at 10:08 a.m.)

3                              * * * * *

4                       **C E R T I F I C A T E**

5

6          I certify that the foregoing is a correct transcript

7    of the record of proceedings in the above-entitled matter

8    prepared from my stenotype notes.

9

10         */s/ Lance A. Boardman*              *October 18, 2023*
           LANCE A. BOARDMAN, RDR, CRR                 DATE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25